**HAMILTON DRILLING COMPANY,**
Appellant (Defendant below),

**Robert M. Taylor and Errett H. Hamilton,**
(Defendants below),

v.

**TOMLIN TRANSPORTATION COMPANY,**
a Wyoming Corporation, Appellee
(Plaintiff below).

No. 3002.

Supreme Court of Wyoming.
Sept. 27, 1961.

Murane, Bostwick & McDaniel, Bostwick, Casper, for appellant.

Jack D. Emery, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

In this case Richard Schoenwald and Robert Schoenwald, brothers, were driving trucks for Tomlin Transporation Company, plaintiff. Each was driving a diesel tractor with a tandem oil tank trailer and a fifth wheel. The over-all length of each unit was approximately 60 feet. Each truck was hauling about 6,000 gallons of crude oil and the gross weight of each unit would be about 74,000 pounds. At the time of the accident here involved, Richard Schoenwald was driving his truck on a dirt or gravel county road in Converse County and up a rather steep hill. Robert Schoenwald was driving his truck about 60 feet behind.

At the same time, Robert Taylor, a partner of Hamilton Drilling Company, defendant, was driving a truck belonging to said drilling company in the opposite direction and down said hill. His truck was equipped with a complete California Earth Boring Machine, known as a rathole digger. About half-way on the hill's slope, the first Tomlin truck and the Hamilton truck met at a place where the road was narrow and dirt filled. Although the two trucks did not collide or touch, the Tomlin truck driven by Richard Schoenwald, was driven so close to the edge of the road that the dirt-filled shoulder or bank of the road caved away, and the truck rolled over.

The plaintiff, claiming that Robert Taylor caused the accident, sued the defendant for damages to plaintiff's truck and for loss of its use during the period of repairs. The case was tried to the district court without a jury and judgment was rendered for plaintiff in the amount of $4,667.62, plus costs, for damages to the truck. The claim for loss of use was not allowed. From this judgment defendant has appealed claiming that the evidence was insufficient to support a finding that negligence on the part of Taylor was the cause of the accident.

Arguments in the case seem to result in considerable hairsplitting and in an attempt on the part of witnesses and attorneys to divide the roadway to an absolute inch. We doubt that this can be done with a guarantee of justice in such a case as this, especially in view of the fact that most measurements were given as approximations. Also, there were no clear, definite or regular lines marking the edges of the road; there was no center line marking; and some of the distances which were measured were measured many months after the accident.

Disregarding then in some instances the exact inch or fraction of an inch, it is fair to say that there is undisputed evidence of the following: At the place fixed by plaintiff's witnesses as the place where the two trucks met, the road from one edge to the other was approximately 18 feet wide; there was a traveled portion about 15 feet wide, with about an 18-inch shoulder on either side which had been made with a dirt fill; both vehicles were approximately 8 feet in width; the roadway was described by the witnesses as having a sort of one-way lane, and the traffic thereon was referred to by plaintiff's witnesses as mostly one-way traffic; so that all vehicles, except when passing, normally traveled with their wheels straddling an unpacked and distinguishable center portion; the surface of the road was dry, but the dirt-filled shoulder was described as soft and wet.

The truck being driven by Richard Schoenwald had a five speed main box and three way auxiliary giving it 15 gears forward. Schoenwald testified that he was about half-way up the hill when he first saw the other truck come over the crest of the hill. At that time he claims his truck was in third and under gear and going about 15 miles per hour. He says that he immediately slowed down to about one mile per hour, or so that he was "just barely" moving when the other vehicle passed. As to whether he ever stopped, he said "Well, I guess not."

In the meantime he claims to have traveled about the length of his unit or 60 feet going from third and under gear to first and under, a difference of four gears. Also, he pulled to the right side of the roadway. While he was doing this Taylor drove from the crest of the hill to halfway down such hill, which would be 300 feet or more according to Richard Schoenwald. The speed of defendant's vehicle was estimated by Schoenwald at 35 miles per hour.

Schoenwald's explanation of the accident was this: "The bank caved in. I got too far to my right and the bank, shoulder of the road, caved." He claimed the cave-in occurred under the right-rear wheels of the trailer causing the trailer to roll over, and that it in turn pulled the tractor off the road and over on its side. Although this witness testified that the roll-over happened about the time the Hamilton truck passed the first Tomlin truck, his brother Robert testified that "after" the Hamilton vehicle met the second Tomlin unit he observed Richard's truck turning over. Robert also testified, "he [Richard] had laid it over and tried to cut it back onto the road *after* he had met the Hamilton truck." (Emphasis supplied.)

It is not disputed in the case that Taylor met both Tomlin trucks and drove on to his intended destination without being aware of the accident at all. He viewed the turned-over truck afterwards, and at the trial he insisted that he had met it at a point 95 feet down the hill from where it turned over.

Simply stated, the question with which we are concerned is this: Did Taylor by negligent driving "force" Schoenwald into a place of danger on the road, or did Schoenwald miscalculate the condition of the shoulder of the road and voluntarily take his position to permit passing?

Schoenwald himself told the court that he drove where he did to avoid a collision and that there would have been a collision if he had not done so. That, of course, was

more or less a conclusion. Also, both of the Schoenwalds testified that Taylor was crowding the center or over the center of the road as he approached. Later on, however, both of them described the road's condition as we have already represented it to be, admitting that all vehicles were compelled to drive and did drive in such a position except when actually meeting another vehicle. Such a road condition is clearly shown in several pictures which were in evidence.

■ Richard Schoenwald did not himself say how close he had driven to the edge of the road, but his brother estimated it was within 6 inches. If it were within 6 inches and if another 6 inches were allowed on the left between his vehicle and the imaginary center, and if his truck took up 8 feet, it will be seen that he fairly well used his half of the roadway, or 9 feet of an 18-foot road, leaving 9 feet only for the other 8-foot vehicle.

The plaintiff did not attempt to establish the distance actually left between the two vehicles and did not attempt to show how close the Hamilton truck was to the edge of the road on its side. Moreover, the testimony offered by plaintiff was based upon estimates, approximations and measurements made many months after the accident. These are circumstances which must be taken into consideration in evaluating the evidence and in determining whether plaintiff has sustained its burden of proof.

We have already pointed out that Robert Schoenwald testified that Richard had laid it (the truck) over and tried to cut it back onto the road after he had met the Hamilton truck. In that regard, Richard also testified that he had straightened out so that his wheels were tracking or fairly close to tracking. He admitted that his tractor could have been slightly to the left of his trailer wheels. It is clear, from a physical point of view, that it would require approximately 60 feet or more to get a 60-foot motor vehicle unit in such a position, from the point at which the front

wheels first reached their outside course to the right. Also, Schoenwald himself testified that he traveled about the length of his unit or 60 feet after he saw the other truck, during which time he was slowing down, edging over and shifting to first and under gear.

This can only mean that he cut his right-front tractor wheel to the line on the right which he intended it to follow and thereafter drove approximately 60 feet before meeting Taylor. If he was reducing speed from 15 miles per hour to one mile per hour, we must assume he was averaging something less than 10 miles per hour which means Taylor was averaging at least three and one-half times as much. Therefore, Taylor would have been at least 270 feet away, or 210 feet from the final meeting point, when Schoenwald chose his distance to the right.

We fail to find anything in the evidence to prove or even suggest that Taylor would have collided with the Tomlin truck if Schoenwald had remained farther from the right edge of the road or even if he had stopped wherever he was, except the opinion of Schoenwald himself. When the trucks were in view of each other there was at least 300 feet between them. If there was not room for them to pass safely, Schoenwald is charged with that knowledge just as much as Taylor was. Taylor could see Schoenwald's truck and could stop or pass within such space as was left for him. Schoenwald had the choice, as far as we can tell from plaintiff's evidence, of stopping his truck or going only as far to the right as he thought safe. We cannot assume Taylor in either case would have collided with it. He was not skidding, or sliding or in any kind of trouble.

It is unnecessary for us to make a finding as to whether Taylor may have actually used more or less of the roadway than did Schoenwald, because it is clear that Schoenwald was in position and either stopped or practically stopped when Taylor got there. In that case Taylor was privi-

leged to use whatever portion of the roadway was left, and it would not be negligence to do so. It is important to notice that Schoenwald was decreasing speed and stopping and that he went down to a gear suitable for starting up again. He was not increasing speed to get away from a vehicle bearing down on him. Moreover, his truck went off the road back end first, which would be unusual for a vehicle crowded off.

The plaintiff has not suggested that the accident was caused by Taylor's speed or from any other cause except the alleged crowding, and we deem it unnecessary to consider other matters in the case. The evidence was not sufficient to sustain a finding of negligence on the part of defendant, and we find nothing in the record to indicate that additional evidence would be available. The case is therefore reversed with directions to enter judgment for the defendant.

Reversed with directions.